That's not correct. I beg your pardon. So United States v. Boney is the next matter for argument. Ms. Hall. Good morning. May it please the court, Jennifer Hall, on behalf of the government, I'd like to preserve five minutes of my time for rebuttal. Granted. Ms. Hall, this is a highly technical and almost mechanical case, which means that it doesn't necessarily lend itself to the most scintillating matter for rebuttal. Scintillate us. I've never heard that used as a verb before. In any event, in fact, it's so non-scintillating, look at the crowd that's left to hear your argument. I won't take it personally, Your Honor. Walk us through just what your argument is here, because it's very mechanically based in the sentencing guidelines and what the district court has to say. Certainly, Your Honor. And the government's cross-appeal, as Your Honor mentioned, the issue presented is whether the district court used the wrong offense guidelines to the defendant's conviction in count two of attempting to kill a government informant and in count four of soliciting the killing of a government informant. And it's the government's position that the answer, the guideline that should have been applied is straightforward and that the court should have used the attempted murder guideline for count three. And the solicitation murder guideline for count four. And the selection of the appropriate offense guideline is set forth in sentencing guideline 1B1.2, which directs how it should be selected. And it says that for the offense of conviction, you look in appendix A to the statutory, which is the statutory index at the back of the guidelines manual. You look up the statute of conviction and you select the guideline that's set forth for that statute. Now, if there's more than one offense guideline set forth for a particular statute because the statute covers a wide variety of conduct, then the court is to choose the guideline that's the most appropriate guideline. Excuse me just one second. Ms. Hall, how much time did you ask for rebuttal? I asked for five minutes for rebuttal, Your Honor. The clock obviously is reflecting an incorrect amount of time. Oh, thank you. Thank you. I beg your pardon. Certainly. So count two, Your Honor, charged the defendant with attempting to kill another person in violation of 1513A1B. And looking at 1513 as a whole, there are a number of criminal offenses that that statute covers. So you have 1513A, which covers killing or attempting to kill another person. 1513B, which covers causing bodily injury to a person or damaging tangible property. And then there's 1513E, which covers other conduct, including taking any harmful action, including interfering with lawful employment. So in accordance with this wide variety of conduct, the statutory index lists a number of guidelines for 1513. Shall I continue, Your Honor? Yes, I'm sorry. We apologize for your argument being interrupted. So the question for the court is really a clear one, which is when someone is charged with and convicted of attempted killing in violation of A1B, which guideline should apply? And it's our position that's a legal question, and it's 2A2.1, attempted murder. Was this argued before the district court? Yes, Your Honor. It wasn't at issue. Well, the initial PSR supplied by the probation office applied 2J1.2. The government made an objection at PSR, and in the revised PSR, the probation officer applied 2A2.1 as requested by the government. And then at the sentencing hearing, the court determined it felt that it was the inappropriate guideline. Let me stop you right there, though, and maybe this is a little bit of inside baseball, but maybe it's something that this panel should know. When I read the transcript of sentencing, I noted that the district judge stated that this was the second case recently in the last couple of months or something like that where she believed that the probation office had, I think her word was pigeonholed facts to get a certain sentence. And I think that's the sentencing result here. Now, there's got to be some kind of back story there. Your Honor, it sounds like there is, and unfortunately, I have no idea what it is. I'm sorry. All right. No nefarious circumstances here to argue. It's just straightforward mechanical application of the guideline. Your Honor, and by the way, we didn't mention this in our brief, but until 2009, 2J1.2 was actually the only guideline listed under 1513 in the statutory index. So after Diaz, which required the court to apply the guideline listed in the index, but before 2009, the court would have been required to apply 2J1.2. But that was amended in 2009, and that's Amendment 729 to the guidelines. It's not mentioned in our brief, but it added the murder guidelines, the attempted murder guidelines, the assault guidelines, and the property damage guidelines. And the reason given for the amendment was that the additional guidelines added, and this is including the attempted murder guidelines and murder guidelines, quote, more adequately reflect the range of conduct covered by 18 U.S. Code 1513, including killing or attempting to kill a witness, causing bodily injury to a witness, and damaging the tangible property of a witness. My apologies, Your Honor. So it's for these reasons it's the government's position that the district court erred when it selected 2J1.2. Turning to Count 4, the law requires the district court to select a guideline that's set forth in the statutory index for the offense of conviction. The offense of conviction here was 18 U.S. Code 373, Appendix A lists two guidelines, 2A1.5, which is soliciting murder, and 2X1.1, which is solicitations that are not covered by a particular offense guideline. And it's our position that the solicitation of murder guideline should have been applied, and was the appropriate guideline because it applies directly to the conduct charged in the indictment, which is soliciting the murder of a government informant. And by contrast, 2X1.1 is only a residual provision that applies when a specific solicitation guideline doesn't apply. Here, and actually the notes to 2X1.1 note that 2A1.5 is an example of an explicit solicitation provision. So it's our provision that the district court should have applied 2A1.5. And just finally as to the remedy, Your Honors, if the court agrees that the district court erred in selecting the appropriate offense guideline for either count two or count four, the court should remand for resentencing. And that's because if the court erred for either count two or count four, the total offense level will be 39 instead of 32 as the district court calculated it, and the applicable guidelines range will be 324 months to 405 months. There's nothing on the record that the district court would have imposed a sentence of 220 months had the guidelines been calculated as 324 to 405. So under this court's precedence, we would request a remand for resentencing. Unless the court has any further questions, I'll waive my time. Thank you. Thank you very much. Mr. Radulski. Thank you, Your Honor. If it pleases the court, Raymond Radulski for the Cross Appellee, William Boney. You would agree, would you not, that given our Aquino decision that our review here is plenary? I would not, Your Honor. Reading Aquino, Your Honor, in the language I've got a quote from it. Basically, this court reviews a district court's application of the guidelines to the facts for abuse of discretion. That is from Aquino. And what I have is whereas here what we review is a district court's interpretation of the guidelines and not an application of law to fact, our review is plenary. Well, Your Honor, we would disagree. We would suggest that the trial judge is in the best position to judge the facts and determine which guidelines... No question, but we're in the superior position to interpret the guidelines as a matter of law, aren't we? Well, if there's a question of interpretation of the guidelines at issue, we would submit it's not. It's a question of the facts that were established, whether or not the sentencing judge had an appropriate basis to sentence in the way to choose the guideline in which she did. She obviously was in a superior position to judge the facts established at trial. She sat through a week-long trial. To give the court a little bit of background, which I think would be helpful in engaging whether or not Judge Robinson made the correct application of the guidelines to the facts. Mr. Bonney was convicted of charge of retaliation against an informant by attempting to kill the informant and solicitation. Pretty serious. Indeed, Your Honor, indeed. But if you look at the facts established at trial, I understand that the court rejected our sufficiency of the evidence argument, which, of course, is pending before this panel under the briefs. But what happened was a gentleman, an informant who was working off drug charges by the name of Phil Haynes, induced Mr. Bonney to enter into a cocaine transaction. To provide him with a supplier. Thereafter, when Bonney was arrested on the drug charge, he immediately turned to the government and said, look, let me out, I'll help you find other criminals. So they turned to Bonney into an informant. There was a lot of that going on in this case, wasn't there? And Mr. Bonney testified that what he wanted to do was to set Mr. Garrett up as a person willing to commit strong-arm crimes. And thereafter, hit a home run to ameliorate his situation with the federal authorities. The facts you're talking about right now are so much more interesting than the argument relative to the guidelines. Well, exactly, Your Honor. But I think the important point is this, and we would hope that when the court does review the briefs for the issues that we raise in our appeal, we'd focus on the fact that even though Bonney met three times with the phony hitman, at no time did he ever provide a last name or address for the target. I thought Delaware was such a squeaky clean state. Well, that's just because you live in Philadelphia. Everything's relative. And in fact, Your Honor, even the hitman admitted that he could not have possibly accomplished the hit without the target information, the last name of the target. The jury heard that and they didn't buy it. I can't understand why they didn't. I can't either, Your Honor, to be honest. Mr. Bonney said it sentencing, if I recall correctly. He just kind of has a temper and he talks too much, right? Your Honor, he is... Isn't that essentially what he said in the elocution? He shoots his mouth off, Your Honor. He tends to shoot his mouth off and he tends to, not to disrespect my client, think he's smarter than he really is. And in fact, I suspect that rubbed the jury the wrong way. But during the three meetings he had with the phony hitman, he never provided that information other than a first name. The guy's name is Phil. He lives in Philly and he has a warehouse in Smyrna with a fancy motorcycle. Pretty easy to find that guy based on the information that was provided, isn't it? Exactly. He could not... And I would have challenged the court if the court could have committed the hit based on that information. But in any event, what the court was presented with in this case was a series of guidelines to choose from. And we would submit that the guidelines are not intended to be a straitjacket for a sentencing court. And in fact, even to the extent that Judge Robinson had selected an improper guideline, technically an improper guideline, there's no resentencing unless it's clear that the error did not affect the district court's selection of the ultimate sentence imposed. And in point of fact, she selected a guideline range based on 2J1.2 of 151 to 188 months. She went outside that to 220 months. The government wants to sentence Mr. Boney to 324 to 405 months, which is 27 to 30 months. The maximum sentence for a 513 violation is 20 years. The maximum sentence for the 1513 is 30 years. Clearly, there's something amiss in that concoction of facts that would lead to a guideline range that far in excess of the sentence that is a maximum the court can possibly impose. Judge Robinson basically, during the sentencing, rejected the government's position that as far as the facts are concerned. She basically stated, quote, I certainly don't believe that the attempted murder was the best fit for the facts as I heard them. And in fact, the... Does that really matter if that's what was charged? I mean, does it really matter? Well, it has to be conviction. But we're required to look at the indictment under our precedent. Well, yes, it's basically I think the way what the court needs to do is the court must determine or the sentencing court must determine which of the reference guideline sections is, quote, most appropriate for the offense conduct charged in account of which the defendant was convicted. Yeah. Well, Kevin Askey's question is right on the mark. It is, exactly, exactly. And as far as the question the court asked earlier about the probation office's pigeonholing of the facts, that being the second time, I'm not at all surprised. And I've been doing this type of work since 1988. And the probation office, unfortunately, uses the government's statement of the case essentially for the factual rendition in the pre-sentence report. Obviously, a defendant has an opportunity to input or to correct those facts and so forth. But out of the gate, the probation office is looking to the government to tell them what happened because they do not attend trials. They come to the sentencing. You know, I went on the district court in 1988. And not only was it my occasional experience, but the stories I used to hear from judges all over the country. In the relatively recent wake of the adoption of the guidelines was that the conflicts that judges were always running into, conflicts were between the United States Attorney's Office and the probation office. Not that there was some kind of complicity. Not in our district, Your Honor. Times have changed. Believe me, I know that at this age. I mean, the judge was faced with a difficult test when you look at the various options that are applicable. But I think if you take the case as a whole and try to square what the statutory maximums are with what is potentially available under the guidelines, the judge, I believe, needs to have some leeway in after having heard the facts of the case and deciding what actually happened. I'm not sure why Judge Robinson came to the conclusion she did. Perhaps... You think it should have been less? No, we were satisfied with, I was satisfied with her determination. Certainly you can view what the government was looking for. Perhaps there was residual doubt as to exactly what was intended by Mr. Boney. Not enough doubt for the judge to overturn the jury, but certainly enough doubt to affect what she thought was actually... Mr. Boney actually sought to accomplish. But I guess that's the question, you know, does the district judge have that authority to say, I don't agree with the jury or these facts really probably didn't warrant this, but the jury could reach that conclusion. Once the jury reaches the conclusion, it seems to me that's the end of the matter. It is a mechanical application. Well, not necessarily, Your Honor. I mean, it's not a straight jacket. I mean, the guidelines are, quote, guidelines. But we have to determine what is the appropriate guideline range. That is not a decision. Once we have to interpret the guidelines and once we make that interpretation, we have to then come to the conclusion what the guidelines require. Well, we would submit, Your Honor, that what Judge Robinson focused on basically was the obstruction of justice aspect of this. And I can't recall exactly at one time or another the judge commenting that, you know, if Mr. Boney was attempting to harm Mr. Haynes, Mr. Haynes was a potential witness in the trial, which would basically be an obstruction of justice focus. And I think that's exactly where the judge went with this. That's not what was charged. That's the problem. They charged a number of different things and threw them in together. And I would suspect that the judge had some difficulty wading through that and figuring out exactly what was the appropriate punishment. She's an experienced judge. She doesn't have difficulty wading through things. And the appendix here that is applicable provides for a number of choices for the judge to make based upon how close that offense is to that which has been charged, right? Exactly. And if, as I've suggested from the keynote, our review is plenary and it becomes a matter of interpretation as to what is the closest offense, then it's for us ultimately to determine just as a matter of law based on the charge that has been set out in the indictment and its proximity in terms of definition or elements to that which is listed in the appendix. The bottom line, though, is that the court is required, if there are multiple choices, make a determination for the section which is most appropriate for the conduct of conviction, essentially. Not just the government focused on indictment, well, we charged this. We're not exactly sure what the jury believed happened, but they convicted him. There were several statutory provisions that were applicable that were in play. And we would submit that the trial judge, when the dust settles, is in the best position to take a look at the facts, determine whether or not any of those various guidelines that are available are the appropriate one for this particular case. And particularly in a case like this where the judge was confronted with the government's argument that, oh, judge, you should choose this particular guideline. And she said, no, I don't believe that fits the facts of this case. I think that's entitled to at least appropriate consideration from the court. She was, again, in the best position to judge what was established at trial and the credibility of the witnesses and the strengths of the government's arguments, certainly as they shook out at the sentencing. Thank you very much. Ms. Hall, do you have rebuttal? Your Honor, just to respond to a couple of the court's questions that were on the table. Do we look to the charge in the indictment or do we look to the offense of conviction? We look to the offense of conviction, and if that statute of conviction covers more than one set of conduct, you look to see which set was charged in the indictment. And that goes to the court's question about what amount of deferences do here. And as Your Honor has mentioned, that was settled in Aquino, and that standard of view makes sense because the question that it goes hand-in-hand with, which is what underlies the determination of which offense guideline should apply. And that's an interpretation of the indictment. Correct, Your Honor. Yes. And 1B1.2 makes clear that the focal point in selecting the appropriate offense guideline is the charging instrument. With respect to counsel's suggestion that if this court determines there's an error in the guidelines calculation that it could still affirm on the basis that the court would have opposed the same sentence, I don't think counsel has met his burden as the proponent of the sentence on appeal that the record is clear and unambiguous that the court would have imposed 220 in the absence of the error in the guidelines calculation. And finally, with respect to counsel's reference that this would result in a total imposition of punishment that's above the statutory maximum for counts two or counts four, our argument to that is laid out in our briefs. The guidelines expressly recognize that that's going to be the case when there are multiple counts of conviction and provide the rules for what to do when that happens. If the court has no further questions, I'll waive. Thank you. Thank you very much, Ms. Hall. Thank you, Mr. Radulski. We'll take the matter under advisement. We'll ask the clerk to recess the proceedings so that we can ready the video.